[No. B091408. Second Dist., Div. Two. June 5, 1995.]

ARMANDO L., Sr., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

550

## COUNSEL

Robert Stevenson and J. Darryn Gum for Petitioner.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Principal Deputy County Counsel, Auxiliary Legal Services, Inc., and Randall Harris for Real Party in Interest.

## OPINION

**THE COURT.**[*]—Petitioner, Armando L., Sr., petitions for a writ of mandate directing the juvenile court to set aside its order of March 13, 1995, ordering the department of children and family services (DCFS) to provide permanent placement services for his son, Armando L., Jr. (the minor), and setting a Welfare and Institutions Code section 366.26[1] selection and implementation hearing for July 11, 1995. Armando L. contends that: (1) "[t]here appears in the record no factual basis for the trial court to conclude that return of the minor to the custody of his father would create a substantial risk to the physical or emotional well being of the minor," and (2) the DCFS "failed to offer [him] reasonable reunification services."

### FACTUAL AND PROCEDURAL BACKGROUND

*The Petition.*

The minor, born August 27, 1993, was detained in protective custody pursuant to a petition alleging, among other things, a failure to protect the child, a lack of provision for the child's support, and that the minor was at risk of neglect and abuse. (§ 300, subds. (b), (g) & (j).) In support of these allegations, the DCFS alleged the minor had tested positive for amphetamines and Valium at birth, and that his mother was a frequent drug user who was incapable of caring for the minor. The petition identified the child's father as "William McFarland," and listed the mother's address as "11324½ Condon Avenue, Lennox."

*Detention Hearing.*

On September 2, 1993, the juvenile court held that a prima facie case for detaining the minor had been established, directed the DCFS to "present

---

[*]Before Boren, P. J., Fukuto, J., and Nott, J.

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

evidence of due diligence in attempting to locate" the minor's father, and continued the matter to October 15, 1993. The DCFS was given permission to place the child with any appropriate relative.

*Pretrial Resolution Conference.*

A pretrial resolution conference was held on October 15, 1993. In a report dated October 13, 1993, prepared for the hearing, the DCFS social worker assigned to the case noted that the minor's mother was residing in Torrance with McFarland, and that Armando L. was residing at 11324½ Condon Avenue, Lennox, in a house to the rear of his parents' home. The minor's mother told the social worker that the minor had been fathered by either McFarland or Armando L., and that neither was involved with or interested in the child. Armando L.'s parents advised the social worker that Armando L. was in Tijuana, and that because he was not sure he had fathered the child, he was not interested in caring for the baby and wanted nothing to do with him. DCFS recommended that both McFarland and Armando L. be directed to submit to HLA[2] testing in order to establish paternity.

The DCFS social worker also noted that the minor had been removed from an inadequate foster home and had been placed with his maternal great aunt, and that this living arrangement allowed frequent visitation with four of the minor's siblings.[3]

On October 15, 1993, the court upheld the allegations under section 300, subdivisions (b)(g) and (j). McFarland and Armando L. were directed to "be involved [with] an HLA blood test although both deny paternity and neither one is present." The court also ordered that neither alleged father was to be allowed to visit the child until they were tested. The matter was continued to November 5, 1993, for a dispositional hearing.

*Jurisdiction/Dispositional Hearing.*

The court declared the minor to be a dependent of the court and once again directed DCFS to provide family reunification services. The matter was continued to May 6, 1994.

*Six-month Review Hearing.*

A six-month review hearing was held on May 6, 1994. In a report dated April 25, 1994, prepared for the hearing, the DCFS social worker noted that

---

[2]Human leukocyte antigen.

[3]The great aunt's son adopted one of the siblings, her brother adopted two more, and her daughter cares for a fourth sibling.

he had been unable to contact Armando L., and it was recommended that he not be allowed to visit the minor because he "does not acknowledge paternity." It was also noted that "Long Beach Genetics confirmed on November 27, 1993, that the minor's father did not show for appointment on November 11, 1993, and on November 12, 1993," and that "[d]ue to the child being of dark hair and complexion, in contrast to the fair hair and complexion of his siblings, it would appear that [Armando L.], as indicated on the child's birth certificate, is the father." On May 6, 1994, the court set the matter for a hearing to be held on November 4, 1994.

*12-month Review Hearing.*

In a report dated September 13, 1994, prepared for the 12-month review hearing set for November 24, 1994, the DCFS social worker noted that it appeared the minor's mother had reconciled with Armando L. "as she has left messages for [the social worker] to telephone" Armando L. at a certain number.

The DCFS social worker telephoned the number provided by the mother, and after the September 13, 1994, report had been prepared and submitted to the court was able to establish contact with Armando L. At that time he was advised he would be required to take the HLA test before he could have any contact with the child.

On November 4, 1994, Armando L., represented by counsel, appeared and indicated his willingness to take the HLA test. He gave his address as 11324½ Condon Avenue, Lennox. The court then continued the matter to January 12, 1995, and directed Armando L. to be tested. The court also ordered that he be allowed to visit the minor two times per month pending the results of the HLA test.

On January 12, 1995, the court ordered weekly visits for Armando L., and directed DCFS to prepare a progress report addressing, among other things, the HLA results. The matter was continued to March 13, 1995.

In a report dated March 6, 1995, prepared for the March 13, 1995, hearing it was noted that Armando L. "is not excluded as the father of the minor," that he had participated in two parenting classes, had tested negative for drugs on seven occasions, had been visiting the minor weekly beginning November 30, 1994, and that the relative caretakers had reported that the visits were "not unpleasant." Armando L. advised the DCFS social worker that his parents had been arguing and had separated, and that, as a result, he had relocated from the Condon Avenue address to a small bachelor house in

the back of his sister's residence in Inglewood. The social worker described the minor's home with his great aunt as "warm and comfortable . . . where he feels secure."

On March 13, 1995, the court found by a preponderance of the evidence that return of the minor to his father would create a substantial risk of detriment to the physical or emotional well-being of the child. The court also found by clear and convincing evidence that the minor could not be returned to the physical custody of his father, and that there existed no substantial probability that the child would be returned within six months. DCFS was ordered to provide permanent placement services for the minor. The court also directed Armando L. to complete the parenting program in which he had been involved, increased the amount of visitation to include overnight visits, ordered psychological testing, and continued the matter to July 11, 1995, for a section 366.26 hearing. Armando L. then filed this petition.

### DISCUSSION

Armando L. contends the evidence was insufficient to support the juvenile court's finding that return of the minor to his custody would create a substantial risk to the physical or emotional well-being of the minor. He also contends that he was not given reasonable reunification services.

Section 366.21, subdivision (f) provides that a child is to be returned to the physical custody of the parent unless the court finds that "return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor." In making this determination, the court must consider "whether reasonable services have been provided or offered to the parent" and whether the parent has "cooperated and availed himself . . . of services provided." (§ 366.21, subd. (f).) Reasonable services include reunification services. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Such services are limited to 12 months, but may be extended to an outside time limit of 18 months, "if it can be shown that the objectives of the service plan can be achieved within the extended time period." (§ 361.5, subd. (a).)

The adequacy of reunification plans and the reasonableness of the DCFS's efforts are judged according to the circumstances of each case. (*In re Edward C.* (1981) 126 Cal.App.3d 193, 205 [178 Cal.Rptr. 694].) The DCFS is required to make a good faith effort to develop and implement a family reunification plan. (*In re John B.* (1984) 159 Cal.App.3d 268, 274 [205 Cal.Rptr. 321].) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services

designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 [286 Cal.Rptr. 592], italics in the original.) The court may not initiate proceedings to terminate parental rights unless they find adequate reunification services were provided to the parents. (See *In re Brittany S.* (1993) 17 Cal.App.4th 1399 [22 Cal.Rptr.2d 50].) However, where there is clear and convincing evidence that DCFS has provided or offered reasonable services, the court may then order a section 366.26 hearing. (§ 366.21, subd. (g)(3).)

### A. *Parental Unfitness.*

■ The court found that the minor could not be returned to the custody of his father without creating a substantial risk of detriment to his physical and/or emotional well-being. Armando L. challenges this finding claiming that no evidence in support of it exists since the juvenile court did not find him to be an unfit parent. He notes the DCFS social worker had no quarrel with his being able to visit with his son (including overnight visits), and that no finding was ever made that his accommodations for the child were inadequate.

As Armando L. suggests, the court's finding was not based upon whether the housing and other services Armando L. was prepared to provide his son were adequate. The juvenile court based its decision upon the fact that Armando L. made no attempt during the first 13 months of the minor's life to become involved with him, and that as a result, he did not come into contact with his son until he was 15 months of age. This fact, coupled with the evidence indicating that the minor was thriving in a secure and loving home, was sufficient to support a finding that giving physical custody of the minor to his father would create a substantial risk of detriment to the minor's emotional well-being.

### B. *Reunification Services.*

■ The reunification services provided here were adequate under the circumstances. As the record indicates, the minor was never in the custody of Armando L., the mother was uncertain as to who had fathered the child, and both alleged fathers denied paternity. Under these circumstances, DCFS was required to do nothing more than make a diligent effort to contact those individuals identified by the mother as potential fathers, and to advise them of what steps would be necessary in order to resolve the paternity issue.

The record reflects that DCFS fully discharged its obligation to Armando L. In addition to interviewing the minor's mother concerning her relationship with Armando L., a DCFS social worker went to his home in an attempt

to contact him, interviewed his parents and his sister, left messages for him to contact DCFS, and left his business card.

It is undisputed that Armando L. resided at the Condon Avenue address with the minor's mother at the time the child was conceived, and that although he may have visited Tijuana for some period of time, he continued to reside at the Condon Avenue address until November 4, 1994. It was to this address DCFS mailed letters to him concerning the minor. As Armando L. points out, we do not know if these letters provided notice to him of the court's October 13, 1993, order directing him to take the HLA test.[4] Armando L. finds this fact to be significant. We do not.

It was not necessary that Armando L. be aware that HLA testing had been ordered by the court. It is enough that he knew a child had been born to a woman with whom he had had sexual relations, that she claimed shortly after the minor's birth that he had fathered the baby, and that the DCFS wanted to be contacted concerning the minor. Because he was in possession of this information, Armando L. had a duty to contact DCFS to ascertain the steps to take in order to determine what parental responsibility, if any, he had to the minor.

Armando L. testified that he did not contact DCFS for more than a year after the minor's birth because, during the last stages of the mother's pregnancy, she told him the child was not his. Later, after the baby was born she told him he had fathered the child, and that if he would allow her to return to his home they could get together and raise the minor. Armando L. believed she was just trying to use him, and rejected her claim that he had fathered the child. Armando L. suggests that under these circumstances he was excused from investigating the matter. In our opinion he was not. He was well aware that he could have fathered the child, and whatever he believed of the mother, it was his responsibility to contact DCFS to resolve the issue. Although DCFS made a good faith attempt to assist him in doing so, Armando L. refused to avail himself of the services offered.

There is clear and convincing evidence contained within the record to support the court's findings. The evidence shows that reasonable services were provided or offered to Armando L., that he made no attempt during the first 13 months of the minor's life to avail himself of them, and that as a result, he did not come into contact with the child until he was 15 months of age. Although the court had some evidence which indicated that Armando L. had had a change of heart and was prepared to assume his parental responsibilities, he made the decision to acquaint himself with his son only near the

---

[4]Neither Armando L. nor the DCFS social worker was questioned during the March 13, 1995, hearing concerning the content of the letters.

end of the reunification period when he was a stranger to the child. Because of Armando L.'s inactivity as a parent, evidence concerning his parental fitness was scant, and overwhelmed by the evidence indicating that the minor would suffer emotional injury if given over to the custody of a near stranger.

Section 361.5 provides for an 18-month statutory time limitation on reunification services. When a child cannot be returned within the 18-month statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a selection and implementation hearing under section 366.26. As the Supreme Court has recently stated, "Children, too, have fundamental rights—including the fundamental right to be protected from neglect and to have 'a placement that is stable [and] permanent.' [Citations.] Children are not simply chattels belonging to the parent, but have fundamental interests of their own that may diverge from the interests of the parent. [Citation.]'" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) Under the facts of this case, no amount of services would have enabled Armando L. to regain custody within 18 months of the date the minor was detained.

## DISPOSITION

Because the record here contains substantial evidence to support the juvenile court's decision to order a hearing under section 366.26, the petition for writ of mandate is denied, and the writ is discharged.