[No. D045980. Fourth Dist., Div. One. June 22, 2005.]

KATIE V., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

588

## COUNSEL

Timothy A. Chandler, Public Defender, and Timothy O. Brackney, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Real Party in Interest.

## OPINION

**McCONNELL, P. J.**—Katie V., R.V.'s mother, seeks extraordinary writ review (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 38.1) challenging the juvenile court's order terminating reunification services at the 18-month review hearing and setting a section 366.26 permanency planning hearing. Katie contends she was not offered reasonable reunification services and the court erred by applying a preponderance of the evidence standard of proof instead of requiring clear and convincing evidence.

We issued an order to show cause, the San Diego County Health and Human Services Agency (the Agency) responded, and the parties waived oral argument. We conclude that at the 18-month review hearing a preponderance

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

of the evidence standard of proof applies to the reunification services issue, and the court's order is supported by substantial evidence. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

After R.V. was born to Katie in June 2003, the Agency filed a dependency petition on her behalf under section 300, subdivision (b), alleging Katie was unable to care for R.V. Katie had no provisions for the baby; she admitted a history of drug use, including crystal methamphetamine use early in the pregnancy, and a history of domestic violence incidents; she received no prenatal care until the last four months of the pregnancy when she was incarcerated; and she suffered from depression, but no longer took anti-depressant medication.

Katie's reunification plan required her to undergo counseling and substance abuse treatment and testing, and complete parenting and domestic violence programs. Katie entered Serenity House, an inpatient substance abuse program, and while there she took medications for her depression under the direction of Dr. Bhatia. Further, the court ordered Katie to participate in the Substance Abuse Recovery Management System program (SARMS) and to undergo a psychological evaluation.

At the January 2004 six-month review hearing, the court ordered six additional months of reunification services. Katie was enrolled in a parenting class and was in compliance with SARMS, and she had supervised visits with R.V. once or twice a week that were considered positive. Katie was enrolled in a domestic violence program until December 2003 when she was dropped from the program because she had two absences in eight weeks.

In February, Katie began individual therapy. Serenity House reported she was in good compliance with the program and her drug tests were negative. She completed the parenting class and reenrolled in a domestic violence group and was "progressing at expected levels." Katie's visits with R.V. continued to be positive. In June, Katie was allowed to have one unsupervised visit per week in addition to two supervised visits.

Katie's probation officer reported she was progressing in her drug treatment and individual therapy.[2] However, the officer also noted Katie "still needs assistance in her parenting skills but is eager to learn. [The] real

---

[2] Katie's probation officer was working collaboratively with the Agency social worker. Katie, who was convicted of grand theft before the dependency proceedings commenced, is on probation until March 24, 2006.

challenge will be for [Katie] to care for her child full-time and transition to independent living."

At the 12-month review hearing in July, the Agency recommended that Katie receive an additional six months of reunification services. The court followed the recommendation.

In mid-August, Katie was terminated from the Serenity House program because of an allegation she sexually abused an unrelated child in the program. The allegation was unsubstantiated, but Katie could not reenroll in the inpatient Serenity House program because of liability issues. Katie's unsupervised visits with R.V. were suspended, and during the following month she was homeless or living with friends. She entered a psychiatric facility in mid-September to stabilize her medications and to deal with a trauma she had suffered while homeless. During this time she was in poor compliance with SARMS, did not attend therapy and cancelled some supervised visits with R.V.

In late September, Katie entered the Home of Hope sober living program. She resumed working on her case plan and was in fair compliance with SARMS through mid-December. Additionally, Katie enrolled in another parenting class, as the social worker was concerned because during a June visit Katie repeatedly put a bucket over R.V.'s head even though it frightened the child. Katie's counselor at the Serenity House outpatient program reported she was doing well and was scheduled to enter the aftercare program at the end of December. She was also attending and doing well in both her domestic violence program and individual therapy. Beginning in November, Katie's unsupervised visitation resumed.

The same month, Katie indicated her medications were "making [her] feel strange." The social worker relayed this information to Bridget Bowman, Katie's counselor at Serenity House. Bowman related that Katie had reported dizziness and memory problems from her medications, which Bowman said were normal reactions. Bowman told the social worker she would talk to Dr. Bhatia about Katie's medications. Katie also told the social worker she had lost her wallet on the bus and did not know how she was going to get to her treatment program or her visits with R.V.

Both the social worker and the probation officer expressed concern over Katie's parenting and problem-solving skills, as well as her mental health problems. Both said they doubted Katie could safely care for R.V. if she were

returned to her mother's custody. For the upcoming 18-month review hearing, the social worker recommended that services be terminated and a section 366.26 hearing be set.

In January 2005, Katie's therapist terminated her counseling after she missed several sessions. Katie told the social worker she had dropped the therapist because she needed one closer to her residence and asked for referrals. The same month, Katie missed three visits with R.V. and had her unsupervised visits suspended because she reportedly threatened the person who monitored her supervised visits that if anything were to happen to R.V. while she was with the monitor, Katie would have to kill the monitor. Katie denied using the word "kill" and said the comment was a joke, but the visitation monitor considered it a threat.[3]

The contested 18-month review hearing was held in February. After the presentation of evidence and arguments, the court advised it wanted to further consider the Agency's evidentiary standard in proving it offered reasonable reunification services to Katie. The court said if the standard of proof was the preponderance of the evidence, the Agency had met its burden, but if the standard was clear and convincing evidence, the Agency had not met its burden. A few days later, the parties presented arguments on the issue and the court took the matter under submission.

On February 28, the court announced it found the preponderance of the evidence standard of proof applies to the reasonable services finding at the 18-month review hearing, and the Agency met its burden of proof. The court also found that returning R.V. to Katie's custody would create a substantial risk of detriment to the child's physical and emotional well-being. The court terminated reunification services and scheduled a selection and implementation hearing under section 366.26.

---

[3] On February 2, Katie left the following voicemail for the coordinator of the visitation center: "Maria, this is Katie . . . . I want a new monitor on Wednesday because I don't need a monitor to take my words and twist them around. And I really don't like Nedy. We don't get along anyway and I'm just tired of her telling me what to do with my daughter. I need someone that's gonna work with me. Instead of demanding me to do this or to do that and talks to me inappropriate way like I'm an adult instead of a five year old. This is ridiculous. I lost my visit because of a statement I didn't mean nothing bad. I didn't say I was gonna kill her either. [¶] My statement was—[¶] Be careful with my baby don't make me hurt you cause it's raining. I was just joking with her. I told her I was joking with her. I need a new supervisor. I can't deal with Nedy. I'm gonna see what I'm going to do today. I'm afraid I'm gonna go off on her. I don't want to do that. Please understand I need a new supervisor. Thank you."

## DISCUSSION

### I

### *Standard of Proof*

Katie contends that at the 18-month review hearing, the Agency was required to prove by clear and convincing evidence that it offered or provided reasonable reunification services, and the juvenile court erred by applying the less onerous preponderance of the evidence standard of proof.

■ " '. . . A preponderance of the evidence standard . . . simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence . . . ." ' " (*In re Angelia P.* (1981) 28 Cal.3d 908, 918 [171 Cal.Rptr. 637, 623 P.2d 198].) " 'Clear and convincing' evidence requires a finding of high probability[, or] evidence . . . ' "so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable mind." ' " (*Id.* at p. 919.)

■ We are required to consider the pertinent statutes—section 366.21, which sets forth procedures for status review hearings, and section 366.22, which sets forth procedures for permanency review hearings. ■ Questions of statutory construction are subject to de novo review. (*Robin J. v. Superior Court* (2004) 124 Cal.App.4th 414, 420 [21 Cal.Rptr.3d 417], citing *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

■ Under the statutory scheme, review hearings are held every six months, at which time the juvenile court determines, among other things, whether the child welfare agency has offered the parent reasonable reunification services. (§§ 366.21, subds. (e), (f), 366.22, subd. (a); *Cynthia D. v. Superior Court* (1992) 5 Cal.4th 242, 249 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) At the six- and 12-month review hearings, the standard of proof for the reasonable services finding is expressly clear and convincing evidence. (§ 366.21, subd. (g)(1) & (2).) Section 366.22, however, which applies to the 18-month review hearing, does not specify the requisite standard of proof. (§ 366.22, subd. (a).)

■ When a statute is silent on the standard of proof, the preponderance of the evidence standard ordinarily applies. (Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."].) ■ Dependency proceedings are a form of civil case (*In re Malinda S.* (1990) 51 Cal.3d 368, 381 [272 Cal.Rptr. 787, 795 P.2d 1244]), and the Evidence Code applies in every action unless

otherwise provided by statute (Evid. Code, § 300). Accordingly, Evidence Code section 115 should control here. (See *In re Manolito L.* (2001) 90 Cal.App.4th 753, 760 [109 Cal.Rptr.2d 282]; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1827 [46 Cal.Rptr.2d 198]; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1114 [200 Cal.Rptr. 789].)

 Moreover, when " ' "a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." ' " (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1186 [2 Cal.Rptr.2d 569].) Thus, the Legislature's insertion of the higher clear and convincing standard of proof in section 366.21, subdivision (g)(1) and (2) for reasonable-services findings at six- and 12-month review hearings, but not in section 366.22, evidences its intent that reasonable-services findings made at 18-month permanency planning hearings not be subject to the higher standard of proof. Accordingly, we conclude that the standard of proof required for a reasonable-services finding at 18-month review hearings is preponderance of the evidence.

 Our conclusion comports with fundamental principles of statutory construction. "To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) We do so by "look[ing] first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].) A court's function in construing a statute is a limited one; our job is to interpret laws, not write them. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist., supra,* at pp. 632–633.) " 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*Id.* at p. 633.)

Further, our conclusion is in keeping with the statutory scheme for dependency cases. (See generally *Cynthia D. v. Superior Court, supra,* 5 Cal.4th at pp. 247–250.) The juvenile law contemplates that reunification will be accomplished within 12 months. (§ 361.5, subd. (a)(1).)[4] The six- and 12-month review hearings occur during "the reunification phase" of the dependency when the focus is on ameliorating problems that led to the dependency to accomplish the goal of family preservation and reunification. (*In re Matthew C.* (1993) 6 Cal.4th 386, 391 [24 Cal.Rptr.2d 765, 862 P.2d

---

[4] For children three years and older, the parent has 12 months to reunify. (§ 361.5, subd. (a)(1).) For children under three years, the court may terminate reunification services after six months. (§§ 361.5, subd. (a)(2), 366.21, subd. (e).)

765].)[5] "Until permanency planning, reunification of parent and child is the law's paramount concern." (*Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 546 [126 Cal.Rptr.2d 14].)

At the 12-month review hearing, the court may continue reunification services for another six months only if it believes there is a substantial probability the parent will reunify within that time. (§ 361.5, subd. (a).) On the other hand, if the court finds there is no substantial probability of return within 18 months of the original removal order, the court must terminate reunification efforts and set the matter for a selection and implementation hearing under section 366.26. (*Cynthia D. v. Superior Court, supra*, 5 Cal.4th at p. 249.)

■ Absent extraordinary circumstances, the 18-month review hearing constitutes a critical juncture at which "the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children." (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788 [42 Cal.Rptr.2d 200]; see § 361.5, subd. (a).)[6] As this court explained in *In re Joshua M.* (1998) 66 Cal.App.4th 458, 474 [78 Cal.Rptr.2d 110], the juvenile law's purpose is "to ensure the well-being of children whose parents are unable or incapable of caring for them by affording them another stable and permanent home within a definite time period. Although the goal of the juvenile law is to reunite children with their parents whenever possible, this reunification must be accomplished within 18 months from the time the child is originally taken from his or her parents' custody. [Citation.] This strict time frame, in turn, is a recognition that a child's needs for a permanent and stable home cannot be postponed for an extended period without significant detriment."

■ If a court is to terminate reunification services and set a section 366.26 hearing after six or 12 months of services, the child welfare agency should be required to show by clear and convincing evidence that it has offered or provided reasonable services to the parent; this higher evidentiary standard favors the parent in his or her efforts to reunify with the child. In contrast, at the 18-month review hearing, the parent already has received services beyond what the juvenile law ordinarily contemplates, and, barring exceptional circumstances, the time for reunification has ended and the child's interest in stability is paramount. At that point, the heightened clear

---

[5] There is a statutory presumption that the child will be returned to parental custody at these review hearings unless the court makes a detriment finding. (*Cynthia D. v. Superior Court, supra*, 5 Cal.4th at p. 249.)

[6] Courts have held that in extraordinary circumstances reunification services may be continued beyond the 18-month review hearing. (*In re Elizabeth R., supra*, 35 Cal.App.4th at pp. 1798–1799.)

and convincing evidence standard of proof would run counter to the child's best interests. "The degree of burden of proof applied in a particular situation is an expression of the degree of confidence society wishes to require of the resolution of a question of fact. [Citation.] The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution. [Citations.] Preponderance of the evidence results in the roughly equal sharing of the risk of error. [Citation.] To impose any higher burden of proof demonstrates a preference for one side's interests." (*In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1490 [61 Cal.Rptr.2d 493].)

Katie relies on the Legislative Counsel's Digest for Assembly Bill No. 3088, which was enacted in 1996 and amended sections 366.21 and 366.22. It states: "Existing law provides that if a dependent child of the juvenile court is not returned to the custody of a parent or guardian at the review hearing held 6 months after the initial dispositional hearing, the court must determine whether reasonable services have been provided or offered to the parent or guardian which were designed to aid the parent or guardian in overcoming the problems which led to the initial removal and continued custody of the minor. *In addition, if the dependent child is not returned to the custody of a parent or guardian at subsequent review hearings, held 12 and 18 months after the initial dispositional hearing, the court is required to take specified action, which may include ordering that a hearing be held within 120 days in which parental rights may be terminated if there is clear and convincing evidence that reasonable family reunification services have been provided or offered to the parents.*

"This bill would provide that evidence that the minor has been placed with a foster family that is eligible to adopt a minor, or has been placed in a preadoptive home, in and of itself, shall not be deemed a failure to provide or offer reasonable services for purposes of those provisions." (Legis. Counsel's Dig., Assem. Bill No. 3088 (1995–1996 Reg. Sess.) 6 Stats. 1996, Summary Dig. pp. 433–434, italics added; see also Stats. 1996, ch. 1028, §§ 1–4.)

Legislative Counsel's Digests are prepared to assist the Legislature in its consideration of pending legislation, and in interpreting statutes they are generally entitled to great weight. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.*, *supra*, 14 Cal.4th at p. 661.) The digests, however, " 'do not have the force of law, for the interpretation of law is a judicial function.' " (*Trans-Action Commercial Investors, Ltd. v. Firmatter, Inc.* (1997) 60 Cal.App.4th 352, 369 [70 Cal.Rptr.2d 449].) If "a Legislative

Counsel's Digest conflicts with a statute, the digest must be disregarded." (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1339 [101 Cal.Rptr.2d 591].)

██ Here, the Legislative Counsel's Digest misstates the existing law. The heightened clear and convincing evidence standard of proof is required for reasonable-services findings at the six- and 12- month review hearings, but not at the 18-month review hearing. The digest does not mention the heightened standard of proof at the six-month review hearing, but flatly states the heightened standard of proof is required at 12- *and* 18-month review hearings. Further, Assembly Bill No. 3088 did not concern the requisite standard of proof, and the introductory or "existing law" language regarding the standard of proof in this digest is analogous to dicta in an appellate opinion, language that is unnecessary to the holding. Dicta, of course, is not binding authority.

## II

### *Substantial Evidence*

██ Katie contends the juvenile court erred by finding reasonable services were provided to her. In particular, Katie claims the social worker should have expanded visitation and provided more services to deal with her mental health problems. We determine whether substantial evidence supports the trial court's finding, reviewing the evidence in a light most favorable to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].)

██ "[T]he focus of reunification services is to remedy those problems which led to the removal of the children." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1464 [234 Cal.Rptr. 84].) A reunification plan must be tailored to the particular individual and family, addressing the unique facts of that family. (*In re Misako R., supra,* 2 Cal.App.4th at p. 545.) A social services agency is required to make a good faith effort to address the parent's problems through services, to maintain reasonable contact with the parent during the course of the plan, and to make reasonable efforts to assist the parent in areas where compliance proves difficult. (*Armando L. v. Superior Court* (1995) 36 Cal.App.4th 549, 554–555 [42 Cal.Rptr.2d 222].) However, in most cases more services might have been provided and the services provided are often imperfect. (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969 [78 Cal.Rptr.2d 311].) "The standard is not whether the services provided were the best that might be provided in an ideal world, but

whether the services were reasonable under the circumstances." (*In re Misako R., supra,* 2 Cal.App.4th at p. 547.)

The record belies Katie's claim the social worker inadequately addressed her mental health problems. When Katie told the social worker her medications were making her feel strange, the worker contacted Bowman, Katie's counselor at Serenity House. Bowman told the social worker that Katie was experiencing normal side effects of the medications, but she nonetheless would confer with Dr. Bhatia, who was managing Katie's medication and regularly treated Serenity House clients. The social worker also relayed Katie's side effects to her therapist, and made repeated attempts to directly contact Dr. Bhatia.[7]

As to visitation, the record shows that in June 2004 the social worker authorized Katie to have a weekly unsupervised visit in addition to the two supervised visits she had every week. A few weeks later, however, Katie was terminated from the Serenity House inpatient program because of an abuse allegation, and the weekly unsupervised visits were suspended. In October, the social worker authorized resumption of the weekly unsupervised visits, but they were suspended again in January 2005 after it was reported that Katie threatened the person monitoring supervised visits. Even if Katie was merely joking, as she asserts, she left a voicemail message in which she expressed concern that she was "gonna go off on" the monitor. (See *ante,* fn. 3.) In both instances, the unsupervised visits were suspended for legitimate reasons. The record does not reveal any bad faith regarding visitation.

We conclude substantial evidence supports the court's finding. R.V. was removed from the home and declared a dependent of the court because of Katie's substance abuse and her lack of provisions for an infant. Her case plan required her to complete a domestic violence program and parenting course and to undergo counseling and substance abuse treatment. These services were reasonable and addressed the issues that were pertinent to R.V.'s dependency. It appears that Katie's "real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 [42 Cal.Rptr.2d 755].) Katie stopped taking her medications between July and September 2004 and did not attend therapy between August and October 2004. Katie also missed visits between the 12- and 18-month review hearings.

---

[7] Katie additionally complains that the social worker ignored a recommendation in a psychological evaluation for a medication evaluation. The psychologist who evaluated Katie, however, was unaware of Dr. Bhatia's treatment.

## DISPOSITION

The petition is denied. The request for stay is denied.

O'Rourke, J., and Irion, J., concurred.