Filed 9/2/20  In re I.R. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b) . This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF

CALIFORNIA SECOND APPELLATE DISTRICT DIVISION

FIVE

| | |
|---|---|
| In re I.R., a Person Coming Under the Juvenile Court Law. | B300530 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.I., Defendant and Appellant. | (Los Angeles County Super. Ct. No.19CCJP01414A) |

APPEAL from orders of the Superior Court of Los Angeles County, Sabina A. Helton, Judge. Affirmed.

Michelle E. Butler, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

J.I. (Father) and Z.P. (Mother) are the parents of a son, I.R., who was three years old when juvenile dependency proceedings began. The juvenile court assumed jurisdiction over I.R. because it found he was at substantial risk of serious physical harm for two reasons: Mother's methamphetamine abuse and Father's criminal history. The court denied Father's request to place I.R. with the paternal grandmother and instead kept him in his placement with the maternal step-grandmother. We consider (1) whether Father's appeal of the jurisdiction finding against him is justiciable notwithstanding the uncontested jurisdiction findings against Mother and (2) whether substantial evidence supports the juvenile court's placement order.

## I. BACKGROUND

The Los Angeles County Department of Children and Family Services (the Department) began investigating I.R.'s welfare in February 2019 when Mother tested positive for amphetamine after giving birth to I.R.'s younger half-brother E.P. Mother admitted to a social worker that she used methamphetamine during her pregnancy. Mother also revealed I.R.'s maternal grandfather had been raising I.R. rather than her; the maternal grandfather confirmed he and the maternal step-grandmother had been caring for the child since birth because of Mother's inability to care for the children.

The Department filed a dependency petition alleging I.R. was a child described by Welfare and Institutions Code[1] section 300, subdivision (b) (as was E.P.) based on Mother's substance abuse and E.P.'s father's history of substance abuse offenses. The petition stated the whereabouts of I.R.'s father were unknown.

---

[1] Undesignated statutory references that follow are to the Welfare and Institutions Code.

The Department later located Father, who was incarcerated at the time, and he made his first appearance in the dependency proceedings in May 2019. Over the next several months, the Department unsuccessfully attempted to contact Father and interview him. When Father was in custody, the Department was unable to reach Father's prison counselor. Later, once Father was released from prison, he failed to show up to a scheduled interview with the Department and he did not return a social worker's phone call.

Although the Department was unable to interview Father, the Department did obtain police reports and court records that documented Father's criminal history over the prior six years. We summarize that history chronologically.

In 2013, Father was convicted of possession of drug paraphernalia, sentenced to 18 months of probation, and ordered to participate in a substance abuse program. His probation was later revoked and he was sentenced to 20 days in jail. Also in 2013, Father was convicted of burglary and resisting arrest after breaking into a car, stealing items, then attempting to flee the police. Father was sentenced to 30 days in jail and given three years of probation. Father violated that probation five times and was given a jail sentence on each occasion.

In 2014, Father was charged with battery and use of a deadly weapon, and he was found guilty of the charge the following year, receiving a sentence of 60 days in jail and three years of probation. Father violated that probationary term twice and was sentenced to 200 days in jail.

In August 2015, Father was arrested after police observed him take a shotgun concealed on his person (which was unregistered and loaded) and toss it into a yard. When apprehended, Father admitted he was a member of the Krazy Crowd gang and went by the gang moniker "Youngster." (Police noted Father also had "KC" tattooed on his arm.) Father was

convicted of carrying a loaded firearm in public and sentenced to 16 months in jail.

In 2017, Father was convicted of inflicting corporal injury on a spouse or cohabitant (this was the offense closest in time to the dependency proceedings). Father was sentenced to 270 days in jail, ordered to complete a domestic violence program, and placed on three years of probation. Thereafter, Father's probation was revoked three times. The third violation resulted in a 290-day jail sentence. In August 2018, after a fourth probation violation, Father was ordered to serve three years in prison.

The Department filed an amended dependency petition in June 2019 that alleged, in a new count, that Father's "extensive" criminal history placed I.R. at substantial risk of suffering serious physical harm. As amended, the petition specifically alleged: "[F]ather's criminal record indicates several convictions for violent crimes. [Father] has been convicted of carrying a loaded firearm in a vehicle/public location, battery, brandishing a weapon, burglary, resisting arrest, and inflicting corporal injury on spouse/cohabitant. The father's violent criminal history and violent conduct endangers the child's physical health and safety . . . ."

The Department's reporting on its investigation of I.R.'s welfare included additional information about Father gleaned from interviews of other family members. Mother expressed concern about Father's gang affiliation and told the social worker that Father rarely paid attention to I.R. when he was younger. The maternal grandparents similarly expressed concern about Father's gang membership and noted he had a history of being in and out of jail. The maternal grandparents also told the Department I.R. had no bond with Father and Father failed to maintain regular visitation or contact with I.R. The maternal step-grandmother further revealed that when Father did have visits with I.R. there were a couple occasions when Father failed

4

to return the child to the maternal grandparents at the agreed-upon time—including one instance when Father had been arrested while he had custody of I.R.

The Department's reporting on its investigation stated I.R. was doing well in the custody of the maternal grandparents. The Department opined I.R. was bonded to his maternal grandparents and called them "'mom and papa.'"

At the combined jurisdiction and disposition hearing held in August 2019, Father was not present.[2] Father's attorney argued the court should dismiss the extensive criminal history allegation against him because there was insufficient evidence of a current risk of harm to I.R. The Department asked the court to sustain the dependency petition as pled, arguing, as to the allegation against Father, that his history of non-cooperation with the court (evidenced by his probation violations and the occasions on which he did not return I.R. to the maternal grandparents after visitation) were good reason to believe I.R. was at risk of serious harm. The court sustained the petition as pled, finding true both the count alleging I.R. was at risk of harm from Mother's drug abuse and the separate count against Father. As to the count adverse to Father, the court stated its view that his violent crimes presented a risk to I.R.'s safety, particularly given his young age, and noted Father was "not present to present any evidence otherwise."

At the disposition stage of the hearing, Father's attorney argued there was insufficient evidence of detriment to justify denying him custody of I.R. The Department maintained removal was appropriate: "Father has been in jail probably half the child's life. He's not present today. He . . . has gang affiliation. He's got gang nicknames. He's got that lifestyle." The court declared I.R. a dependent of the court and ordered him

---

[2] Father's attorney did not know why Father was absent and requested a continuance. The juvenile court denied the request.

5

to remain placed with the maternal step-grandmother. The court stated it was not releasing I.R. to Father "for the reasons stated by [the Department]," adding that I.R. had been in his current placement for a long time and did not appear to have much of a relationship with Father. The court ordered monitored visits for Father, as well as parenting education and individual counseling.

Father now appeals the jurisdiction finding and the order declining to place I.R. in his custody.[3]

## II. DISCUSSION

It is certainly arguable that the juvenile court's assumption of jurisdiction over I.R. would not be proper based solely on the dependency petition's criminal history allegation against Father. (See, e.g., I*n re S.D.* (2002) 99 Cal.App.4th 1068, 1077 ["There is no 'Go to jail, lose your child' rule in California"].) But that was not all the petition alleged; it is undisputed jurisdiction over the child was proper based on the court's finding that Mother was a methamphetamine abuser. Because we would affirm the juvenile court's decision to assume jurisdiction over I.R. regardless of the contested adverse finding against Father, we will not analyze the propriety of that finding on the merits. As to Father's separate challenge to the disposition order, substantial evidence supports the court's determination that placing I.R. with Father would be detrimental. Father had well-documented difficulties staying out of prison and following court orders, and there were obvious concerns about disrupting I.R.'s stability with the maternal grandparents who had been caring for him essentially since birth.

---

[3]      The Department asks us to take judicial notice of a Department report and a juvenile court order made after the hearing from which this appeal is taken. We deny the motion. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.)

6

### A. *We Decline to Resolve Father's Challenge to the Jurisdiction Finding on the Merits*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*), quoting *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 (*Alexis E.*); see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 [dependency law's primary concern is the protection of children] (*I.A.*).) There is no challenge to the jurisdiction finding against Mother, which alone justifies dependency jurisdiction over I.R. We therefore need not, and do not, consider the sufficiency of the evidence to support the juvenile court's jurisdiction finding specifically adverse to Father.[4] (*I.A.*, *supra*, at 1492 ["For jurisdictional purposes, it is

---

[4]      The Court of Appeal panel that decided *In re Drake M.* (2012) 211 Cal.App.4th 754 stated it would generally exercise its discretion to consider a challenge to a jurisdiction finding that is moot by virtue of the existence of another sustained finding if the challenged finding "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*Id.* at 762-763.) Accepting the *In re Drake M.* criteria for argument's sake, we opt not to exercise our discretion in this case. There are no non-speculative future adverse consequences Father may face as a result of the adverse jurisdiction finding that he does not already face as a result of his underlying criminal history. Father does challenge the child placement aspect of the court's disposition order, but considerations other

7

irrelevant which parent created [the] circumstances" triggering jurisdiction]; see also *In re Briana V.* (2015) 236 Cal.App.4th 297, 308; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent"].)

> ### B. The Juvenile Court's Refusal to Give Father Custody of I.R. is Supported by Substantial Evidence

When the court orders removal of a child from a custodial parent at disposition, "the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." (§ 361.2, subd. (a).) Father was such a non-custodial parent in this case. "If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) We review the juvenile court's placement orders using the substantial evidence standard of review. (See, e.g., *In re C.M.* (2014) 232 Cal.App.4th 1394, 1402; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

Under that standard of review, the juvenile court's decision to refrain from placing I.R. with Father is adequately supported. Father's consistent history of committing criminal offenses and being returned to custody for violating court orders provide good reason to think I.R.'s safety would be in jeopardy because Father would not be around to provide proper supervision for a child of

―――――――――――――――

than his criminal history are also relevant to the juvenile court's placement decision.

8

such a young age (and would fail to otherwise make appropriate arrangements for I.R.'s care). Indeed, the record indicates that in one prior instance, Father was arrested when he had temporary custody of I.R. for visitation. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior"].) Father also failed to communicate with the Department after being aware of the dependency proceedings, and this provides further reason to believe he would not or could not prioritize ensuring I.R.'s safety if given custody of the child. In addition, I.R. was stable in a placement with the only people he had ever really known as functional parents—the maternal grandparents he called mom and papa—and the juvenile court could properly infer that pulling I.R. out of that placement to live with a largely unknown father and paternal grandmother would be emotionally detrimental. (See *Armando L. v. Superior Court* (1995) 36 Cal.App.4th 549, 555.)

9

DISPOSITION

The juvenile court's orders are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



MOOR, J.