Filed 7/30/13  Ana C. v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANA C.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN FRANCISCO COUNTY,<br><br>        Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES<br>AGENCY,<br><br>        Real Party in Interest. | A138752<br><br>(City & County of San Francisco<br>Super. Ct. No. JD12-3091) |

Mother petitions this court for an extraordinary writ pursuant to Welfare and Institutions Code section 366.26[1] and California Rules of Court, rule 8.452, seeking review of the juvenile court's order terminating her reunification services and setting the matter for hearing to implement a permanent plan for her now 15-month-old daughter. She contends there was no substantial evidence supporting the finding that she was provided with reasonable reunification services. We deny the writ petition on the merits and deny as moot mother's related request for a stay of these proceedings.

**Factual and Procedural History**

In March 2012, after mother and her newborn daughter tested positive for PCP, the San Francisco Human Services Agency (agency) filed a section 300 petition and

---

[1] All statutory references are to the Welfare and Institutions Code.

1

placed the daughter in emergency foster care. The petition alleged, among other things, that mother had substance abuse and mental illness issues that required assessment and treatment; tested positive for PCP the day after her daughter's birth; failed to benefit from the services provided to her by the agency in connection with a prior dependency case involving her three other children; failed to reunify with those three children; and had a lengthy child welfare history as well as a criminal history.

In the accompanying detention report, the social worker noted that reunification services were terminated as to her three older children only two months before her daughter's birth. Mother reported to the social worker that she used marijuana and PCP periodically, but that she stopped using drugs when she first learned she was pregnant. She claims that she was around friends who used PCP but she had not smoked it while pregnant and was surprised to know that the drug tests were positive. She explained that she was participating in an outpatient drug treatment program during the course of her older children's dependency proceedings, but because she missed three appointments she must complete the orientation program again in order to re-enter the program. She also claimed to have completed parenting and anger management classes and to be participating in individual therapy.

At the initial detention hearing, the daughter was detained and placed in foster care. Mother was granted supervised visitation.

In advance of the jurisdictional hearing, the agency submitted a report recommending that the court bypass services. The report states, "Given the uncertainty of [mother's] mental health, her active substance abuse, and her failure to reunify with her older children, the agency cannot recommend services for [mother]." The social worker explained that mother continued to deny that she uses drugs, despite a history of positive drug tests, and observed that mother's "failure to be forth-coming about her substance abuse is concerning as [she] actually believes that she does not have a problem." Mother reported to the social worker that "if she is not getting her baby back, she is not staying in [a] program."

2

An addendum report filed in June 2012 provides additional information regarding mother's substance abuse treatment. The social worker reported that after the hearing on May 23, 2012, she learned that mother had signed herself in to a residential drug treatment program. On June 6, the social worker met with mother and her case worker to review mother's progress in the program. The case worker reported that mother "presents as very defiant and gets angry if things do not go her way."

Prior to the contested jurisdiction/disposition hearing, the agency filed a first amended section 300 petition, which included an additional allegation pursuant to section 300, subdivision (j), alleging that mother failed to reunify with the three older siblings and that the three older children are currently in legal guardianship. Following a hearing on August 30, the court established jurisdiction, ordered visitation for mother, and set a disposition hearing.

In an addendum report filed in advance of the disposition hearing, the social worker reported that mother continued to use drugs despite being in a residential treatment program. The report states that mother had two positive drug tests on June 27 and July 2, 2012. The June test was conducted after mother left the facility for a community visit and appeared to be under the influence when she returned. "Mother denied using and stated that she was offended that she was asked to test. [She] continued to deny using, stating that the drug stays in your system for 30 days, which is why it was positive." Because she had been in the program for just under 30 days as of the first test, a second test was completed on July 2 to confirm the results. "Prior to the test coming back positive, [mother] was informed [that] if the July 2nd test was positive, she would be terminated from the program; it was at this time that she admitted to using and the program gave her another opportunity due to her admission of usage."

At the disposition hearing, the juvenile court found by clear and convincing evidence that there was a substantial danger to the daughter's physical safety, protection or physical or emotional well-being if she were returned to mother's care, that the agency had made reasonable efforts to prevent or eliminate the need for the daughter's removal,

and declared the daughter a dependent of the court. Mother was ordered to engage in recommended services and was granted supervised visitation.

On February 22, 2013, in advance of the six-month review hearing, the social worker submitted a status review report recommending that in light of mother's chronic and lengthy history of substance abuse, services be terminated and the matter be set for a section 366.26 hearing. The social worker observed that mother "has demonstrated her ability to comply with her case plan activities: go to groups, attend individual therapy, submit to drug/alcohol tests, etc. [However], [n]o matter how many certificate of completion [she] obtains, there seem to be no significant behavioral changes, resulting in the re-occurrence of the same issues." The report explains that while mother completed the residential substance abuse program on November 27, 2012, one week later she relapsed. Paramedics found mother on the street in an intoxicated, catatonic state. Mother was unable to provide any specific information regarding the whereabouts of her five-year-old son, who at the time was staying with mother on an unauthorized and unsupervised visit. The child was eventually located and he informed the investigating social worker that "my mom drinks a lot." The doctor who treated mother informed police officers that he suspected that she had drugs in her system.

In an addendum filed in May 2013, the social worker reported that mother had stopped submitting to regular drug testing. According to the service provider, mother's last drug test was on February 28, 2013, and she failed to appear for her scheduled appointment on March 6, 2013. Mother then missed the next three weeks of testing, called to schedule an appointment for the end of April, and then failed to appear for that appointment. Similarly, mother had not attended a therapy appointment since March 2013. According to mother's therapist, the last scheduled therapeutic session was on April 8, 2013, but mother failed to appear for the appointment. The therapist informed the social worker that she needed to speak with mother before providing a written progress report. Finally, after graduation from the out-patient program, mother was referred to and was participating in the dependency drug court program. The addendum indicates that mother was discharged from the program in April after missing two

appointments. The addendum also notes, however, that discharge appears to have been the product of a miscommunication between mother and staff, and that her re-entry into the program was pending at the time of the report.

The social worker also detailed a new referral received by the agency regarding a verbal and physical altercation involving mother. At the time of the incident, mother's five-year-old son was again staying with mother on another unauthorized and unsupervised visit and witnessed the domestic violence. Despite the police report identifying mother as a party to the altercation, mother denied that she was involved.

The social worker again recommended the termination of services, observing that mother's lack of progress and inconsistent participation in the required services were troubling, particularly since mother had been provided ample services for a total of two years.

The social worker was the only witness at the contested six-month review hearing, and her reports were admitted into evidence. The social worker testified that prior to the completion of mother's residential program, the social worker conferred with the program director to set up aftercare programs, such as an outpatient program, to support mother in maintaining her sobriety. Following mother's graduation, mother attended sessions at a women's center and participated in 12-step meetings. Nonetheless, as noted in her report, mother relapsed within a week of her graduation. The social worker opined that even if services were continued to the 12-month review hearing, mother would receive only a couple more weeks of services and would be unlikely to reunify with her daughter.

After considering the evidence, testimony, and oral arguments of all counsel, the trial court found by clear and convincing evidence that reasonable services had been provided to assist mother to overcome the problems which led to the dependency, that mother had not sufficiently mitigated those issues, and that returning the one-year-old child to mother's custody would create a substantial risk of detriment to the child's safety, protection, and emotional or physical well-being. The court further found that there was

not a substantial probability of the child's return to mother's care at the 12-month review, terminated services, and set a section 366.26 hearing.

Mother filed a timely notice of intent to file a writ petition challenging the court's termination of services and the setting of the permanent plan hearing.

**Discussion**

At the sixth month review hearing, a court may terminate reunification services and order the setting of a section 366.26 permanency hearing only if "there is clear and convincing evidence that reasonable services have been provided or offered to the parent . . . ." (§ 366.21, subd. (g)(1)(C).) The reasonableness of services is judged according to the circumstances of each case. (*Armando L. v. Superior Court* (1995) 36 Cal.App.4th 549, 554.) A social services agency is required to make a good faith effort to address the parent's problems through services, to maintain reasonable contact with the parent during the course of the plan, and to make reasonable efforts to assist the parent in areas where compliance proves difficult. (*Id*. at pp. 554-555.) "In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) We determine whether substantial evidence supports the court's finding that reasonable services were provided, reviewing the evidence in a light most favorable to the prevailing party and indulging in all reasonable inferences to uphold the court's ruling. (*Id*. at p. 545.)

In this case, the agency arranged for and mother participated in a wide range of services, including a residential treatment program, an outpatient drug treatment program, individual therapy, drug testing, and parenting classes. Mother argues that while the agency may have developed a reasonable reunification plan "it is clear that from the beginning there was never any intention to return the child to her mother. The social worker assigned to this case had already made her mind up and was looking to fast track a permanency plan that excluded the mother." She faults the social worker for failing to "follow up on [mother's] progress in therapy and her attendance at an outpatient

program" and failing to increase visitation or allow unsupervised visitation once she was in the outpatient program. She argues that by failing to gather information from mother's service providers, the social worker "painted a portrait of [mother's] engagement in services . . . that is at best, inaccurate, and at worst, false." We disagree.

The record does not demonstrate any bad faith on the part of the agency or social workers. As detailed above, the record establishes that the social workers made appropriate referrals and consulted regularly with mother's service providers throughout the proceedings. Mother argues that the social worker's bad faith is demonstrated by her failure to follow up on missing attendance sheets from the outpatient treatment program between April and May 2013. At the review hearing, however, the social worker acknowledged that mother had reported that she was attending her out-patient treatment program, and conceded that she had not requested or received additional evidence of attendance after March 2013. The social worker's failure to request additional evidence of attendance does not establish that the agency failed to provide reasonable services or was acting in bad faith. Moreover, it is entirely unlikely that the missing attendance records would have had any impact on the outcome of the proceedings.

Mother also argues that the social worker incorrectly reported to the court that her individual therapy had been discontinued and that she had been discharged from the dependency drug court program. The record, however, establishes that the social worker gave an accurate report of mother's participation in therapy and the dependency drug court, as reported to her by the service providers at the time of the report. Moreover, the social workers provided ample clarification of her report at the hearing. She confirmed that there was some confusion regarding mother's discharge from the dependency drug court program, but also acknowledged that mother had attended some sessions in May and intended to re-engage with the program. Likewise, the social worker testified that mother's therapist was hoping to speak with mother before providing a progress report to the agency and indicated that "she would call mom to reschedule the therapy sessions" she had missed. It is immaterial whether the social worker reported that therapy was

7

"discontinued" or "pending" insofar as the factual information provided to the court was accurate and allowed the court to evaluate mother's progress.

Finally, contrary to mother's argument, the agency made reasonable efforts to facilitate visitation between mother and child. The status review report indicates that mother had supervised bi-weekly visits on Tuesdays and Fridays for three hours and that mother was attentive to her daughter's needs and seemed comfortable caring for her during the visits. The social worker reported that in October 2012, mother had cared for her daughter without incident at the facility during a two-week visit while the child's caretakers were out of town. At the six-month review hearing the social worker testified that after the successful October visit, the agency evaluated the prospect of increasing visits, including overnight visits, and intended to implement additional visits once mother sufficiently demonstrated that she could stay drug-free for an extended period of time. She explained that she was willing to authorize the two week visit in October because mother was in a program and there was supervision. The real test, however, was how she would "do outside in the community, is she going to be able to apply all the tools she learned in this program." For this reason, the social worker wanted mother "to stabilize outside after completing the program . . . prior to placing the child with her." The agency was considering overnight visits around the Christmas holiday, but when mother relapsed in early December, the agency determined that increasing visits would no longer be appropriate. Under the circumstances, we do not believe that the agency's decision not to increase visitation demonstrates a failure to provide reasonable services.

**Disposition**

The petition for extraordinary writ is denied on the merits (§ 366.26, subd. (l); Cal. Rules of Court, rule 8.452(h).) The request for a stay is denied as moot. Our decision is final immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b).)

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.