Filed 8/2/13  L.W. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| L.W., | |
| Petitioner, | E058485 |
| v. | (Super.Ct.Nos. J240514 & J240515) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cheryl C. Kersey, Judge.  Petition denied.

Au Lang T.N. Le for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel, and Regina A. Coleman, Deputy County Counsel, for Real Party in Interest.

1

Petitioner L.W. (father) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order denying reunification services as to his children, M.W. and J.W. (the children), and setting a Welfare and Institutions Code[1] section 366.26 hearing.

Father now argues that the San Bernardino County Children and Family Services (CFS) failed to provide him with reasonable reunification services. We deny the writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2011, CFS filed section 300 petitions on behalf of the children. M.W. was five years old at the time, and J.W. was 10 years old. The petitions alleged that the children came within the provisions of section 300, subdivision (b) (failure to protect). Specifically, the petitions alleged that the children's mother (mother)[2] had a substance abuse problem and was suffering from serious emotional disturbances, and that father knew, or reasonably should have known of mother's problems, but failed to protect the children.[3]

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Mother is a not a party to this writ.

[3] The petitions also list another child, L.T., on the allegations concerning mother only. L.T. is not father's child, and is not a subject of this writ petition.

*Detention*

The social worker filed a detention report stating that mother was arrested on August 29, 2011, for being under the influence of methamphetamine while trying to pick up her children from school. She also appeared mentally unstable. The police released the children to the maternal grandmother. Mother stated that father's whereabouts were unknown, that the last time she saw him was six months ago when he visited the children, and that he had never really been involved in their children's lives. The social worker contacted father and spoke with him on the phone. He said the children did not live with him because he travelled for his job. He currently did not have room for them to live with him, but he wanted to take the children if the maternal grandmother was unable to keep them.

On September 2, 2011, the court detained the children with the maternal grandmother.

*Jurisdiction/ Disposition*

The social worker filed a jurisdiction/disposition report on September 20, 2011, and recommended that the court sustain the petitions and order reunification services for the parents. The social worker reported that she had a phone interview with father on September 14, 2011, and he stated that he wanted placement of the children. Father admitted that he knew mother was abusing drugs. He also said he had no recent criminal history, but then admitted that he had an open court case for child pornography. The social worker checked father's criminal history and found that he had an extensive history of drugs and domestic violence. He was arrested in 2002 for a probation violation

for possession of a controlled substance for sale and was sentenced to two years in state prison. His most recent conviction was for possession of child pornography. (Pen. Code, § 311.1, subd. (a).) Father's initial case plan required him to participate in general counseling, complete a parenting education program, and attend a Narcotics Anonymous program.

On September 22, 2011, the social worker amended the children's petitions to include an allegation that the children were at risk for abuse or neglect due to father's child pornography conviction and history of substance abuse and domestic violence.

A jurisdiction/disposition hearing was held on September 23, 2011, and father was present. The court ordered visitation between father and the children to be once A week for one hour, supervised. The court authorized the social worker to liberalize visitation when he deemed it appropriate. The matter was continued for mediation. Father was not present for the mediation. Father then set the matter for contest.

A contested jurisdiction/disposition hearing was held on November 7, 2011. Father was not present because he was incarcerated in another county, but he was represented by counsel. The court found that father was the presumed father of the children, and that the children came within section 300, subdivision (b). The court declared the children dependents of the court. The court approved the case plan and ordered father to participate in reunification services.

*Six-month Status Review*

The social worker filed a six-month status review report dated May 7, 2012, and recommended that reunification services be continued. The social worker reported that

4

father was convicted of possession of child pornography on June 11, 2011 (Pen. Code, § 311.1, subd. (a)), and was recently released from prison and put on probation until June 2014. The social worker further reported that father was referred to parenting classes and counseling, but had not shown evidence of enrollment yet. The social worker updated father's case plan to include sexual abuse counseling, a parenting education program, and participation in outpatient substance abuse program.

A six-month review hearing was held on May 7, 2012. Father was present. Counsel informed the court that father wished to attend his children's sporting events. According to father, his probation officer would be amending his probation conditions to allow him to be around his children and other children. The court specified that father had to provide proof that his probation officer would allow him to have unsupervised contact with his children and, if he wanted to attend sporting events, he would need to show proof that the probation officer would allow him to be around other children. The court ordered reunification services to continue. The court also increased visitation to up to two hours, once a week, supervised. The court again authorized the social worker to liberalize the frequency and duration of the visits, as appropriate.

*12-month Status Review Report*

The social worker filed a 12-month status review report dated November 1, 2012, and recommended that reunification services be continued. The social worker included father's probation officer's name and information, and reported that father had completed the Cooperative Parenting Program through the Catholic Charities Counseling Program in March 2012. The social worker further reported that father was referred to Medtox for

5

random drug testing and had tested negative six times. The social worker also reported that father's visits with the children were appropriate. Father was still expressing his desire to go to his son's sporting events, but the social worker had not received approval from his probation officer.

A 12-month review hearing was held on November 1, 2012. Father's counsel submitted on the social worker's report, but urged the court to "start liberalizing visits," since he was already at the 12-month hearing. She noted that father had been participating in services and had tested clean, except for once. Father was now on chemotherapy and radiation, since he had been diagnosed with cancer. The children's counsel had no objection to the social worker having the authority to liberalize visits, but noted that father's current home was not suitable since he had roommates. The court stated that it was giving CFS the authority to liberalize visits, but father's counsel stressed that he did not just want the authority, but wanted an order saying, "Father will get more visits." When counsel for CFS asked whether father was asking for unsupervised visits or more visits, father responded that he "want[ed] more time." The children's counsel responded that she was concerned since father was recently released from prison for child pornography, and she wanted to hear from father's therapist as to the progress he had made with that issue. She did not object to giving father more time, but objected to any unsupervised visitation. The matter was continued.

At a hearing on November 27, 2012, counsel for CFS informed the court that the social worker visited father's home and approved it as appropriate for supervised visits. CFS had no objections to increasing visits up to four hours per week. The children's

6

counsel interjected that, from the last hearing, the increase in visits was conditional upon father participating in counseling for sex offenders. Father stated that he was enrolled, and that he had already attended six sessions. Counsel for CFS confirmed that father was enrolled in group therapy and in individual counseling. The court then asked if everyone agreed to continue father's reunification services and increase his visitation to four hours a week. The children's counsel agreed. Father's counsel asked if visits would be supervised or unsupervised, and the court said, "supervised as he progresses through counseling." Father's counsel then requested that the social worker be authorized to liberalize the visits to being unsupervised. She noted that father was in the process of obtaining a letter from his therapist saying that he was not at risk. The court ordered supervised visitation once a week for four hours, with the social worker having the authority to liberalize visits "as to frequency and duration and supervision." The children's counsel agreed. The court noted that father's progress had been moderate and ordered reunification services to continue.

*18-month Status Review*

The social worker filed an 18-month status review report and recommended that father's reunification services be terminated and a section 366.26 hearing be set. The social worker reported that father was enrolled in the individual and group sessions through Lutheran Social Services to address sexual abuse issues. The social worker requested a report from Lutheran Social Services, but had not received it yet.

The social worker further reported that father went to the CFS office to see about getting gas cards. He informed the social worker that his throat cancer was improving

7

and that he had 12 more chemotherapy sessions left. Father again said he wanted to go to his son's sporting events, but the social worker still had not received approval from the probation officer.

The social worker reported that father had not completed all the components of his case plan; thus, return of the children to his home would create a substantial risk of detriment. He further reported that father's visits had been consistent and appropriate.

Father was present at the 18-month review hearing on February 27, 2013. He challenged the social worker's recommendation and set the matter for contest.

Father did not appear at the contested hearing on March 4, 2013. Father's counsel requested a continuance to allow time to subpoena two witnesses, including father's therapist. Father's counsel noted that she had provided the court with a letter from the therapist, Patricia Dorobiala. The letter was dated March 1, 2013, and stated that father entered sex offender group treatment on May 22, 2012, and had completed seven sessions, prior to becoming ill. He missed the next 13 sessions and then returned for eight more sessions, in between his chemotherapy treatments. Furthermore, father had asked for individual therapy, as directed by the social worker, and had had four individual sessions. In the letter, the therapist said she spoke with the social worker at the time of father's first individual session to request a referral, and also contacted him on February 28, 2013, but had not received any paperwork thus far. The therapist stated that without "the specifics for therapy," it was not clear what father needed to work on. The therapist said that, even though no referral had been received, father was working on techniques to ensure his children's welfare when returned to his care. Father's counsel informed the

court that father wanted to contest the matter of reasonable services. The court continued the matter to April 9, 2013.

Father was present at the contested 18-month review hearing, but chose not to call the therapist as a witness. Rather, he decided to call the social worker to testify. The social worker testified that father's case plan requirements consisted of individual counseling, group counseling, drug testing, and a parenting class. The social worker referred father to drug testing on February 28, 2012. Father had been testing, and his tests were negative. The social worker further testified that, on December 27, 2011, they went over father's case plan, and father was given a resource list for services. The social worker told father that he needed to address the issues of child pornography and the triggers for it when he went to counseling. From the resource list, father chose to go to Lutheran Social Services for group and individual counseling, and Catholic Charities for his parenting class. He subsequently completed the parenting class.

With regard to individual counseling, the social worker testified that father started the counseling with Lutheran Social Services on May 22, 2012, got sick, and then restarted when he got better, around September 2012.

The social worker testified that he submitted a referral to Lutheran Social Services one week prior to the current hearing, telling them to address the issues of child pornography with father, triggers for it, and how to prevent it. The social worker explained that "the main thing" about providing a referral to a service provider was that it started the process of being able to pay for the treatment. When the social worker was asked why he waited until last week to send a referral, the social worker replied:

"Honestly, this is my reasoning:  Normally none of the providers will start services prior to having the referral.  [Father] came in with a list of the times—he had already started . . . and I had previously submitted that form to the Court . . . ."  The social worker later clarified that he had sent the verification of program attendance sheet to the court.  Thus, it was his understanding that, as of December 2012, father was participating in counseling at Lutheran Social Services.  He said that normally, he followed up with the provider to make sure the provider was addressing the issues of concern; however that was not done in this case.  After father's counsel continued to question the social worker about the referral, the court sustained a relevance objection and stated that counsel was "beating it to death."  The court addressed father's counsel and said, "What are you really going after?  He made referrals.  Your guy is in counseling . . . .  [¶]  He doesn't have to keep making the same referral."  When counsel stated that the social worker had a responsibility to ensure that the service provider was addressing certain issues with father, and she wanted to know if that was done, the court replied:  "Doesn't your client have a duty to say, 'I need to deal with this issue of child pornography?'  Why is it the social worker's responsibility to tell them what to counsel him on."  Father's counsel continued to question the social worker.  The social worker said that he followed up with father and asked if he was discussing child pornography and the triggers, and father "brought evidence that he was working on it."  Father's counsel asked the social worker if he did any "independent investigation" to make sure father addressed those issues, and the social worker said no.  Father's counsel asked, "[W]ouldn't it have been important for you to ensure that Father is addressing these things in therapy?"  The court stated that it

was not relevant, and said to father's counsel. "What do you want him to do?  Do you expect him to hold your client's hand?"  The court intimated that the social worker did not have time for "babysitting" father in that way.  After more questioning, the social worker said that father told him his treatment in therapy was "coming along pretty well."

Father's counsel also asked about visitation, and the social worker confirmed that father was having supervised visits that were appropriate.  When asked why father was still receiving supervised visits, the social worker said he did not feel he could allow the children to be unsupervised, and father could not be around unrelated children.  The social worker acknowledged that father wanted unsupervised visits, and that he had visited father's home and found it acceptable.

Father's counsel concluded that CFS had provided father with unreasonable services.  She acknowledged that father had participated in services, gone to counseling, and "done what he need[ed] to," but asserted that father "[was] the one that has sought out services."  She contended that the social worker did not tell father what to do, that he (the social worker) never talked to anybody about child pornography, and that he never independently verified if father was addressing that issue.

The court stated that it thought father's counsel's argument was "ridiculous," noting that father was an adult, that he had been engaged in counseling, and that he knew he was supposed to address the obvious—child pornography, sexual abuse, and triggers for child pornography.  The court found that reasonable services had been provided, that father's progress had been minimal, and that return of the children created a substantial

11

risk of detriment to them.  The court terminated reunification services and set a section 366.26 hearing.

## ANALYSIS

### There Was Substantial Evidence to Support the Court's Finding

### That Father Was Provided With Reasonable Services

Father complains that CFS did not provide him with reasonable services.  He claims that the social worker "tried to thwart [his] reunification by failing to ensure [he] received counseling to address child pornography and the triggers."  He asserts that the social worker sent the list of what father's case plan was supposed to address the week before the contested 18-month hearing, and that the social worker failed to tell father to talk about child pornography and the triggers.  Father additionally argues that CFS did not make a good faith effort to facilitate visitation, and asserts that his visits remained supervised because the social worker "failed to do anything to independently verify the father's participation in his case plan."  Father's claims are meritless.

A.  *Relevant Law*

"A reunification plan must be tailored to the particular individual and family, addressing the unique facts of that family.  [Citation.]  A social services agency is required to make a good faith effort to address the parent's problems through services, to maintain reasonable contact with the parent during the course of the plan, and to make reasonable efforts to assist the parent in areas where compliance proves difficult.  [Citation.]  . . .  'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the

12

circumstances.' [Citation.]" (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598-599 (*Katie V.*).)

"[W]ith regard to the sufficiency of reunification services, our sole task on review is to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered. [Citations.]" (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) "We determine whether substantial evidence supports the trial court's finding, reviewing the evidence in a light most favorable to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.]" (*Katie V.*, *supra*, 130 Cal.App.4th at p. 598.)

B. *There Was Substantial Evidence to Support the Court's Finding That Reasonable Services Were Provided*

We have reviewed the record and find father's argument unavailing. He was given an initial case plan in September 2011, but it was revised to address his conviction for child pornography. The revised plan included the requirements that he participate in sexual abuse counseling, complete a parenting education program, and participate in an outpatient substance abuse program. The record reveals that CFS adequately provided father with reunification services. In December 2011, the social worker went over the case plan with father and gave him a resource list for services. From the resource list, father chose to go to Lutheran Social Services for group and individual counseling, and Catholic Charities for his parenting class. Father completed the parenting class in March 2012. Father enrolled in individual and group counseling sessions to address his sexual

13

abuse issues. He attended classes on a weekly basis. Father completed seven group sessions, prior to becoming ill. After missing the next 13 sessions, he returned for eight more sessions. Father also completed four individual sessions. The record indicates that the social worker had monthly meetings with father regarding his progress, and father said his treatment was going well. The social worker also referred father to Medtox for random drug testing. In addition, during the course of the dependency, father had supervised visitation with the children, in accordance with the court's order, that was consistent and appropriate.

Father's main complaint is the same one he made at the contested 18-month hearing. He claims that the social worker did not contact the therapist to discuss father's counseling objectives, and that the social worker did not tell father to talk about child pornography and the triggers. Contrary to these claims, the evidence shows that the social worker told father he needed to address the issues of child pornography and the triggers for it when he went to counseling. Father points out that the social worker received the letter from the therapist, dated March 1, 2013, which indicated that the therapist requested a referral from the social worker twice. Father complains that, as of the contested hearing on April 9, 2013, the social worker still had not called the therapist to address father's objectives. However, at the contested hearing, the social worker testified that he sent the referral instead of calling the therapist. The social worker also testified that he had communicated with Lutheran Social Services about father before he received that letter.

Furthermore, as the juvenile court pointed out, father was perfectly capable of telling the therapist that he needed to deal with the issue of child pornography. The social worker was not required "to take the parent by the hand and escort him or her to and through classes or counseling sessions. A parent whose children have been adjudged dependents of the juvenile court is on notice of the conduct requiring such state intervention." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn 5.) Moreover, there was no apparent need to "ensure" with the therapist that father was receiving counseling, since father confirmed that he was participating in sexual abuse counseling, and he apparently gave the social worker a program attendance sheet. In addition, the social worker followed up and asked father if he was discussing child pornography and its triggers, and father "brought evidence that he was working on it."

As to father's claim that the social worker did not make a good faith effort to facilitate visitation, the record shows otherwise. At the detention and initial jurisdiction/disposition hearings, the court ordered visitation to be one time a week for one hour, supervised. The court authorized CFS to liberalize visitation as to frequency and duration when deemed appropriate. At the six-month hearing, the court increased visitation to one time a week for up to two hours, supervised. Father wanted more time, especially to attend his children's sporting events, and the court informed him that he needed to show that his probation officer would allow him to have unsupervised visits, and would allow him to be around other children. By the time of the 12-month review hearing, the social worker had not received approval from father's probation officer. The social worker did visit his home to assess it for unsupervised visitation and deemed it

15

appropriate. The court then increased visitation to one time a week for four hours, and authorized CFS to liberalize visits as to frequency, duration, and supervision.

Father claims that his visits remained supervised because the social worker "failed to do anything to independently verify [his] participation in his case plan." From that assertion, he concludes that "the social worker's failure constitutes unreasonable services as it relates to visitation." However, there was no evidence that father provided proof that his probation officer would allow unsupervised visits with the children or contact with other children. There was also no evidence that father ever submitted a letter from his therapist, as he said he would, stating that he was not at risk. At the 18-month review hearing, when the social worker was asked why father was still having supervised visits, the social worker said he did not feel he could allow father to be with the children unsupervised, and father "[could not] be around unrelated children."

Therefore, contrary to father's claim that his services with regard to visitation were unreasonable, the record shows that his visitation was consistent and was regularly increased as to duration. The visits remained supervised in order to protect the children, in light of father's child pornography conviction.

We conclude that there was sufficient evidence to support the court's finding that the services provided to father were reasonable.

### DISPOSITION

The writ petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

16

                                        <u>HOLLENHORST        </u>
                                                  Acting P. J.


We concur:


<u>McKINSTER            </u>
                        J.


<u>MILLER              </u>
                        J.