Filed 9/10/14  K.F. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| K.F.,<br><br>　　　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>RIVERSIDE COUNTY,<br><br>　　　　　Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT<br>OF PUBLIC SOCIAL SERVICES,<br><br>　　　　　Real Party in Interest. | E061023<br><br>(Super.Ct.No. SWJ1200427)<br><br>OPINION |

　　　　　ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso,

Judge.  Petition denied.

　　　　　Daniel L. Vinson for Petitioner.

　　　　　No appearance for Respondent.

1

Gregory P. Priamos, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

K.F. (mother) seeks a writ of mandate ordering the respondent superior court to vacate its orders terminating reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  Mother challenges these orders on the grounds that reasonable services were not provided to the family, and that the juvenile court abused its discretion by not continuing the 18-month review hearing in order to provide reasonable services to the family.  Neither contention is well taken, and we deny the petition.

FACTS AND PROCEDURAL BACKGROUND

D.F., born in August 2000, was detained in foster care in June 2012, and the Riverside County Department of Public Social Services (Department) filed a petition under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (c) (serious emotional damage).

The detention report stated that mother had taken D.F. to the hospital insisting she suffered from tetanus, although it was determined she did not have the disease.  D.F. stayed in the hospital six days and was diagnosed with conversion disorder (a condition in which "a person has symptoms in response to emotional abuse") and an eating disorder.  The minor

_____

[1]  All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

reported that she had been physically abused by mother and verbally abused by mother and mother's boyfriend.[2]

At the detention hearing on June 7, 2012, the juvenile court found a prima facie showing had been made. The court ordered that visitation with mother would be detrimental to D.F., and it ordered no visitation. The court ordered reunification services for mother. At the continued detention hearing, the court again found a prima facie showing and ordered supervised visitation once weekly in a therapeutic setting.

The social worker reported that no visitations had taken place because D.F. did not want to visit mother. The social worker recommended that both mother and D.F. receive psychological evaluations and participate in counseling and conjoint counseling and that any visitation take place in a therapeutic setting. At a hearing on July 2, 2012, the court stated that visits should take place only if a therapist feels it is appropriate.

The Department filed an addendum report on July 27, 2012. D.F. had been in the hospital from July 11 until July 13 because she refused to eat. She told the social worker she would be willing to visit with mother "only if someone was right there with her," although she also said she missed mother and wanted to go home if she saw proof that mother had changed. She also said she probably would have a nervous breakdown if she visited mother.

---

[2] We have taken judicial notice of the records in case Nos. E058277, E058472, E059635 and E060749.

3

At the jurisdictional hearing, the juvenile court found true allegations under section 300, subdivision (b). The supporting facts were that D.F. had disclosed that the mother continues to call her derogatory names, mother fails to protect the child from mother's boyfriend who called her derogatory names, and that the mother suffers from emotional distress due to a parent-child conflict. The court ordered reunification services for mother and ordered that "[p]rior visitation orders remain in full force and effect." D.F was referred for counseling, and the Department requested that she receive a psychological evaluation.

The Department filed a six-month status review report in January 2013. D.F. was to continue attending counseling sessions. Her therapist recommended that no contact take place between D.F. and mother because D.F. "continue[d] to report past abusive incidents committed on her by the mother and the mother's boyfriends." D.F.'s caretaker reported that D.F. did not have an eating disorder and she maintained a healthy appetite, although she sometimes did not eat when she was upset. D.F. expressed animosity toward mother and became anxious when visitation or phone calls with mother were mentioned. The Department filed a report of D.F.'s psychological evaluation which stated, "[D.F.] is experiencing a heightened degree of depression, anxiety and posttraumatic patterns which are consistent with her descriptions of the severe physical and sexual trauma when with her mother. . . . It is quite evident she will be traumatized even by having any contact with her mother." The report opined that D.F. suffered from post traumatic stress disorder (PTSD), but there were no indications of psychosis, and D.F. felt safe and secure in her current placement.

4

D.F. had been prescribed Zoloft and she informed the social worker it helped lower her anxiety.[3]

The Department filed an addendum report in March 2013 in which the social worker indicated that arrangements were underway to increase D.F.'s therapy sessions to once a week. The social worker also reported that mother's therapist and D.F.'s therapist had not yet spoken. The latter provided a letter stating that D.F. did not want her to communicate with mother's therapist. D.F. sent a letter addressed to the judge, explaining the reasons why she did not want any contact with mother.

D.F. continued to display high levels of anxiety, which appeared to be centered on fear of being reunified with mother. She had been engaged in individual counseling with a female therapist. When this therapist took a leave of absence for medical reasons, D.F. was assigned a male therapist and thereafter she often refused to attend session. A new referral was made and she was to begin counseling at MFI, but D.F. refused to engage in counseling because she believed that mother could locate her and attempt to be present.

The Department recommended at the time of the 12-month review that mother's services be terminated and that visitation continue to be suspended. However, the court ordered that reunification services for mother be continued for six months.

On August 23, 2013, the court ordered that D.F.'s therapist be switched to a qualified psychologist since she had previously been seen by an intern. It found that visits with

_____

[3] Mother appealed from the order granting leave for this prescription. We dismissed the appeal as being moot. (*In re D.F.* (Jan. 21, 2014, E058277) [nonpub. opn.].)

mother continued to be detrimental. Although a referral for therapy was accepted in September 2013 for an agency within Riverside County, it was later determined that there was no psychologist on staff. An updated referral was submitted but declined because the agency that was being sought for services was not within the network of providers. In January 2014, the court ordered the Department to expend all county funds to ensure that the minor participated in a psychological evaluation and receive all appropriate therapeutic services.

D. F. was referred to Dr. Garrett for a second psychological evaluation. He indicated that the minor needed long-term psychotherapy over the next five years to help her overcome the damaging effects of whatever abuse she had experienced. He recommended that D.F. have no contact with mother until she turned 18 years old, and after undergoing an extensive amount of therapy. He opined that some type of abuse had occurred.

At the 18-month review hearing, the parties stipulated that mother had completed her case plan and had made substantial progress.

Ms. Donth, the social worker previously assigned to the case, testified that she made multiple phone calls and had multiple conversations with the agency social worker concerning the status of the therapy referral for D.F. She testified that the foster care agency is the responsible party and that the referral is made through "CARES."

A qualified psychologist, Dr. Lee Madigan, was eventually located to provide ongoing therapeutic services for D.F. The psychologist concurred with the diagnosis that D.F. suffered from PTSD and anxiety disorder. She also opined that it would be detrimental

6

for D.F. to visit with mother. She testified that she became involved in the case in February 2014, and had five sessions with D.F. Dr. Madigan testified that the minor was terrified of being in court and encountering mother. The minor planned to run away if she was returned to mother's care.

Ms. Alvarez, the current social worker, testified that the minor did not have a therapist for six months from August 2013 to February 2014. She described the typical process for referrals. Because D.F. was in a foster family agency home, the referral would go through CARES, and the agency social worker would submit the referral. Based on Medi-Cal requirements, the referral would be approved or denied. If approved, it would be submitted to an approved Medi-Cal provider.

Ms. Alvarez further testified that D.F.'s referral process started the day of the court's order for a psychologist. She followed up multiple times a month with various people trying to find different ways to get a psychologist on board. Between the social worker, the agency worker, and CARES, at least 30 to 40, "if not more," psychologists were approached to work on this matter, but a majority of these were not under the CARES network and would not take the referral.

The trial court found that reasonable services were provided despite the six-month delay in therapy because of the extraordinary efforts made to try to secure a qualified psychologist to work with D.F. It noted that it was the Department that suggested it order all available funds to be expended to find a psychologist outside the referral network. The court terminated services to mother and set a section 366.26 hearing.

DISCUSSION

Under the statutory scheme, review hearings are held every six months, at which time the juvenile court determines, among other things, whether the child welfare agency has offered the parent reasonable reunification services. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) The burden is on the department to show the provision of reasonable services. Mother contends that it has to present clear and convincing evidence to meet this burden. Unlike the statutes pertaining to the six-month or 12-month review hearing, section 366.22, subdivision (a), governing the 18-month review hearing does not expressly require the clear and convincing evidence of reasonable services. It has been held, therefore, that the standard of proof at the 18-month review hearing is preponderance of the evidence. (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 595, but see Cal. Rules of Court, rule 5.708(m).) In either case, we find the juvenile court's order is supported by substantial evidence.

The standard of review when a parent challenges the reasonableness of the reunification services provided or offered is whether substantial evidence supported the juvenile court's conclusion that such services were reasonable. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Substantial evidence is evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "All conflicts must be resolved in favor of the respondent and the reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court." (*In re Albert B.* (1989) 215 Cal.App.3d 361, 375.)

8

The juvenile court noted that there was no dispute that services offered mother were reasonable, but contends that reasonable services were not provided the family, namely D.F. The Department calls attention to the fact that at the 18-month review hearing the court is required to determine whether reasonable services were offered or provided to *the parent* or legal guardian only. (§ 366.22, subd. (a).) Nevertheless, we find that reasonable services were provided to D.F. On August 23, 2013, the juvenile court ordered that D.F. receive therapy from a qualified psychologist. The department was not able to secure the services of a qualified psychologist for six months until February 2014, but this was not for want of trying. The Department started the referral process within a day. The social worker followed up multiple times a month with various people trying to find different avenues to get a referral approved and a psychologist on board. In fact, the social worker testified that they went to extraordinary lengths to locate such a psychologist, contacting 30 to 40 before finding one that was willing to work on the case. A majority of those contacted were not under the CARES network and would not take the referral. The Department did not anticipate that it would take as long as it did to find a psychologist to treat D.F.

This gap in receiving treatment is regrettable, but it must be recognized that in most cases more services might have been provided and the services provided are often imperfect. "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." [Citation.]" (*Katie V. v. Superior Court*, *supra*, 130 Cal.App.4th at pp. 598-599.) The fact that D.F did not have a therapist for six months does not mean she was not provided

9

reasonable services. Prior to the August 2013 order, she did receive therapy from a female intern with whom she developed a rapport. When this person went out on leave, D.F. was transferred to a male therapist with whom she was not comfortable. A referral was then made to MFI, but D.F. refused to attend therapy because she was afraid that mother would seek her out. Many of the problems in providing services to D.F. were caused by her refusal at times to participate in therapy, despite the Department's efforts. Despite the delay in obtaining therapy by a qualified psychologist, the court noted that multiple other services were provided to her. Based on this record, substantial evidence supports the juvenile court's finding that reasonable services were provided.

Finally, the juvenile court did not abuse its discretion in refusing to continue family reunification services beyond the 18-month review hearing. Section 366.26, subdivision (b), provides a limited right to a continuance where additional reunification services would serve the child's best interests, and the parent is making "significant and consistent progress" in treatment programs or in establishing a safe home after release from custody. In these cases, the juvenile court may continue the case only on a finding that there is a substantial probability that the child will be returned to parental custody and safely maintained in the home within the extended period or that reasonable services have not been provided. (§ 366.22, subd. (b); Cal. Rules of Court, rule 5.720(b)(3)(A); *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504.) As we have already discussed, the services offered and provided mother, as well as D.F., were adequate. It is clear, moreover, that there is no possibility D.F. could have returned to parental custody within the next six

10

months. The doctor who conducted the second psychological evaluation reported that D.F needed long-term psychotherapy over the next five years, recommending that she have no contact with mother until she turned 18 years old. Dr. Madigan testified that D.F. was terrified of being in court and encountering mother. Mother has not visited during this entire time because of fears that it would be severely detrimental to D.F. As the juvenile court noted, D.F. remained in the same place, or even in a worse place, than she was at the time of removal, and that it "defies all reason and logic to suggest that with more time or had the psychologist, Dr. Madigan, been involved earlier, [D.F.] would be ready to open her arms to mom."

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

11